## Commonwealth v. Buckius et al.

*Liquor laws—Injunction to abate liquor nuisance—Sufficiency of proof—Padlocking—Act of March 27, 1923, P. L. 34.*

1. The purpose of proceedings to enjoin violations of the liquor law is preventive, not punitive, and it must be shown that the sales complained of are continuous and recurrent and likely to occur in the future.

2. In this case the property involved was worth $45,000 and rented for $225 a month to the defendant, who conducted a restaurant there. Four State policemen testified that, on three occasions between five and six months before the bill was filed, and one afterwards, they bought intoxicating liquor on the premises. This testimony was not corroborated, though other persons were alleged to have been present and no samples of the liquor were taken, and it was contradicted by the defendant and his employees: *Held*, that the evidence was insufficient to sustain the bill for an injunction and it should be dismissed.

PER CURIAM.—"Courts are too frequently met in these days with applications for summary and extreme punishments, based solely upon evidence which juries often refuse to believe and of the truth of which judges are doubtful."

Bill for injunction against violations of liquor laws. C. P. Lancaster Co., Equity Docket, No. 7.

*Harry L. Raub, Jr., Joseph B. Wissler* and *Wilhelm F. Knauer*, for plaintiff.

*Paul A. Mueller* and *John M. Groff*, for defendants.

LANDIS, P. J., Sept. 11, 1926.— . . . On June 7, 1926, this case came before us for final hearing and the following facts were elucidated:

### Findings of fact.

Martin Link, one of the above-named defendants, is the owner of a piece of ground on which are erected large buildings used by him, before the passage of the Volstead Act, as a licensed hotel stand. About five years ago he removed to Atlantic City, New Jersey, and he then leased the property to Harry W. Buckius, the other defendant. Buckius uses and has used the ground floor of this property for restaurant purposes. The old bar still stands upon the same, but he has installed a large lunch bar, covering about three-quarters of the main room, and on one side of it is a large refrigerator. There are also in the room steam tables, which hold the pots of soup and so forth, trays for hot meats and three large gas ranges. Another large refrigerator holds the cold supplies. The property is worth about $45,000 and it is rented to Buckius for $225 a month.

There was no evidence presented in the case that beer in excess of one-half of 1 per cent. of alcoholic content was ever sold or kept on the premises. Upon the hearing, four State policemen named in the bill were examined. Downey said that, on June 22, 1925, he purchased three drinks of whiskey, which he, Kirkpatrick and an unknown man consumed; that the bartender was a man weighing 160 pounds, six feet tall and about twenty-eight or thirty years old. Buckius and his employees were called to the stand, but none of them was identified as the man who, it is alleged, sold the whiskey. On June 24, 1925, the same men, having visited The Anchor and Rothweiler's saloons, came to Buckius's place, and they say Kirkpatrick bought liquor. Fegan and Nasel testified they visited the place on July 24, 1925, and that Fegan purchased two whiskeys. It is admitted by them that other persons were in the room at the time. Neither of them could identify the person who sold them this liquor upon their examination in chief; but afterwards Nasel took the stand and said it was Buckius. There was no corroboration of their stories, and no samples were taken by them of the liquor said to have been purchased.

Commonwealth *v.* Buckius et al.

The appearances of these witnesses, their manner of testifying and the stories told of their doings in the city at the time these offences were alleged to have been committed, were not such as to convince the court of the reliability of their evidence. Upon this testimony alone, we are unwilling to find that a nuisance was committed, and continued to be committed, on the premises. However, viewing the case as we do, we can assume at this time that some one sold liquor to them on the premises.

There was also the testimony of George E. Trump, another State policeman, that, on Dec. 16, 1925, he purchased two glasses of whiskey. He says he was in company with another State policeman, by the name of Jones, who did not appear. He saw no one else purchase whiskey, though he was in the room about twenty-five minutes, and two men, he states, were standing at the bar. The bartender he did not know. This visit is not referred to in the bill. These four occasions are the only ones to which any testimony is directed.

There is no proof that the defendants did "defiantly" persist "in violating the said Prohibition Enforcement Act by continually keeping and selling large quantities of beer, whiskey and other intoxicating liquor on said premises at divers other times prior to said above-mentioned dates and thereafter to various other persons," and we, therefore, find as a fact that no such condition prevailed.

The defendant, Buckius, and his employees all testified that no liquor in violation of law was sold on the premises or with their knowledge, and it is not disputed that the windows of the room were open, so that a full view of it could be had from the outside.

Martin Link, the other defendant, denies that he ever had any knowledge of any liquor being illegally sold there, although he made inquiry from time to time as to how the place was being conducted. We find as a fact that he had no such knowledge.

### Conclusions of law.

The allegations of clause "*b*" of paragraph 5 of the bill are: "That the said defendants heretofore, to wit, on the 22nd and 24th days of June, and the 24th day of July, 1925, unlawfully sold intoxicating liquors, to wit, whiskey and beer, on said premises to Robert M. Kirkpatrick, John J. Downey, William Fegan and Joseph G. Nasel, members of the Pennsylvania State police force, and others," and that "intoxicating liquor, to wit, whiskey and beer, as defined in section 2 (*a*) of the Prohibition Enforcement Act, is sold or kept for sale for beverage purposes upon said premises by the defendants above named, and the said defendants have defiantly persisted in violating the said Prohibition Enforcement Act by continually keeping and selling large quantities of beer, whiskey and other intoxicating liquor on said premises at divers other times prior to said above-mentioned dates and thereafter to various other persons." It will be observed that all of the above sales were made from five to six months before this bill was filed.

In the recent case of Com. *v.* Eckert and Lancaster Security Real Estate Company, Equity Docket, No. 7, page 199, we have lately said that the purpose of a proceeding such as this is preventive and not punitive. In support of this same view, it is said in Cornelius on Search and Seizure, page 525: "It has been held that a bill for an injunction to abate a liquor nuisance must show that the sales therein are continuous or recurrent, since authorizing abatement for a single sale would be to authorize a suit in equity, where the legal remedy by prosecution for the sale is adequate. Where injunctive relief is sought because of repeated and continuous breaches of duty or violations of the law, the evidence must show that such violation, if not prevented, will

occur in the future, and if the transgressions have ceased before the bill is filed, and if it appears that they will not be repeated, injunctive relief will not be granted, but the aggrieved party will be left to his action at law."

The law, when persistently violated, must and should be enforced by what is commonly called the padlock remedy. This, however, is a highly punitive provision of the statute, and it should be used only when the court is thoroughly satisfied that the public interests demand it. Courts are too frequently met in these days with applications for summary and extreme punishments, based solely upon evidence which juries often refuse to believe and of the truth of which judges are doubtful. The State police in the past has been a highly efficient body, and it commanded the admiration of the people of the State. It is manifest that this condition does not, to the same extent, at present prevail. We have here the sole evidence of policemen, seemingly not of a high type, uncorroborated in any respect, although, according to their own statements, there were present a number of persons in this restaurant when the alleged violations of the law were committed. It can fairly be assumed that some of the persons present could have been secured as witnesses. The defendant and his employees deny the accusations, and the case stands oath against oath. Counsel for the Commonwealth ask us to believe these policemen and to disbelieve the defendants, and to apply rigorously the provisions of the Act of March 27, 1923, P. L. 34, upon their word alone. It must be remembered that property rights are here involved, and we think that, before such a remedy is applied, there should be shown some corroborative proof. We have, therefore, refused to declare the defendant's restaurant a nuisance.

For lack of sufficient evidence, in our judgment, we dismiss the bill, at the costs of the plaintiff.

From George Ross Eshleman, Lancaster, Pa.